UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| NORMAN VINCENT MILNER, SR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ──────────────────────── ) | Case No. EDCV 12-388 (SH) <br><br> MEMORANDUM DECISION <br> AND ORDER |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and for Supplemental Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Plaintiff's Brief in Support of Relief Requested in Plaintiff's

Complaint["Plaintiff's Brief"]; Memorandum of Points and Authorities in Support of Defendant's Answer ["Defendant's Brief"]; Plaintiff's Reply Brief ["Plaintiff's Reply"]), and the defendant has filed the certified transcript of record. After reviewing the matter, the Court concludes that the decision of the Commissioner should be reversed and remanded.

In January 2007, plaintiff Norman Milner, Sr. filed an application for a period of disability or Disability Insurance Benefits. On February 21, 2007, plaintiff filed an application for Supplemental Security Income. Both applications alleged an inability to work since January 23, 2006, due to a lower back injury. (See Administrative Record ["AR"] 139, 292-38). On June 29, 2009 (following hearings on December 4, 2008 and February 25, 2009, see AR 67-129), an Administrative Law Judge ("ALJ") issued a partially favorable decision. The ALJ determined that plaintiff had a severe impairment -- degenerative lumbar disc disease status post three surgeries -- and found that plaintiff was disabled within the meaning of the Social Security Act for the closed period from January 23, 2006 through January 21, 2008, but not beginning on January 22, 2008. (See AR 139-49).

On March 15, 2010, the Appeals Council affirmed the ALJ"s finding that plaintiff was disabled from January 23, 2006 to January 21, 2008, but remanded the matter to the ALJ for further proceedings solely with respect to the issue of disability beginning on January 22, 2008. (See AR 154-56).

On October 22, 2010 (following a supplemental hearing on September 13, 2010), the ALJ determined that plaintiff had the following severe impairment -- degenerative lumbar disc, status post operative times three -- but found that plaintiff was not disabled beginning on January 22, 2008. (See AR 16-25).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-6), plaintiff filed this action in this Court.

Plaintiff makes five challenges to the 2010 Decision denying disability benefits for the period after January 21, 2008. Plaintiff alleges the ALJ erred in (1) failing to consider all of plaintiff's severe impairments, (2) failing to give appropriate weight to plaintiff's treating physician and the examining physician; (3) failing to consider both severe and non-severe impairments when assessing plaintiff's residual functional capacity; (4) failing to properly assess plaintiff's credibility; and (5) failing to comply with the Appeal Council's remand order.

For the reasons discussed below, the Court concludes that plaintiff's first claim of error does not have merit, and that plaintiff's second claim of error has merit. Since the Court is remanding the matter based on plaintiff's second claim of error, the Court will not address plaintiff's third through fifth claims of error.[1]

## DISCUSSION

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to consider all of plaintiff's severe impairments, specifically chest pains with cardiac symptoms and a mental impairment (AR 474-75). Defendant argues that the ALJ did not need to consider plaintiff's chest pains, and that the ALJ did consider plaintiff's mental impairment.

"An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical and mental ability to do work activities." 20 C.F.R. § 404.1521(a). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ also must "consider the claimant's subjective symptoms, such as pain or fatigue, in

---

[1] To the extent that plaintiff's third claim of error is simply a restatement of petitioner's first claim of error, plaintiff's third claim of error is without merit, as discussed below.

determining severity." Id. An impairment or combination of impairments is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on a individual's ability to work.'" Id.; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).

With respect to plaintiff's chest pains with cardiac symptoms (AR 474 [notation in medical record, dated May 5, 2010, that plaintiff was assessed with "costochondritis (chest pain from ribs)" and physician "reviewed cardiac symptoms with patient"]), the ALJ did not need to discuss it because there was no indication that plaintiff's chest pain symptoms were long-term or had any effect on plaintiff's ability to work (AR 474 [noting that plaintff "is generally health [sic] appearing and in no acute distress"]).[2] See Vincent v. Heckler, 739 F.2d 1393, 1996 (9th Cir. 1984) ("The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why "significant probative evidence has been rejected.'").

With respect to plaintiff's mental impairment (AR 474-75 [notation in medical record, dated May 5, 2010), the ALJ explicity considered it. (See AR 20 [noting that plaintiff "was complaining of anxiety and depression and that the doctor diagnosed depression" and "there was no clinical signs of depression reported other than [plaintiff's] statement that he felt worthless and was not sleeping well, but [plaintiff] reportedly denied suicidal and homicidal ideation, and the doctor other than counseling [plaintiff] and providing some general health information and brochure(s) did not provide any medication or referral for further treatment."). Substantial evidence supported the ALJ's conclusion that the duration requirement necessary to establish a mental impairment had not been satisfied (AR 20). See 20 C.F.R. §§ 404.1509 and 404 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last

---

[2] The ALJ must have been aware of plaintiff's chest pains because they were identified in the same medical record identifying plaintiff's mental issue, as discussed in the next paragraph.

for a continuous period of time of at least 12 months.). Moreover, there was no indication that plaintiff's mental problems were long-term or had any effect on plaintiff's ability to work.

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to give appropriate weight to Dr. Uppal, plaintiff's treating physician, and to Dr. Watkin, an agreed upon medical examiner. Defendant asserts that the ALJ provided specific reasons for rejecting the opinions of Dr. Uppal and Dr. Watkin.

A treating physician's opinion is entitled to special weight. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). A treating physician's opinion is entitled to greater weight than that of an examining physician. Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); 20 C.F.R. § 416.927(d)(1). An examining physician's opinion is entitled to greater weight than that of a nonexamining physician. Lester v. Chater, supra; Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).

"The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, supra. The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, supra, A treating physician's medical opinion unsupported by described medical findings, personal observations, or test results may be rejected. See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1195 (9th Cir. 2004); Burkart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988).

"To reject the uncontroverted opinion of a claimant's physician, the [Commissioner] must present clear and convincing reasons for doing so." Magallanes v.

Bowen, supra. The Commissioner also must provide clear and convincing reasons for rejecting the uncontraverted opinion of an examining physician. Lester v. Chater, supra; Pitzer v. Sullivan, supra.

"To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes v. Bowen, 881 F.2d 747, 751 (1989); see also Morgan v. Apfel, 169 F.3d 595, 596 (9th Cir. 1999)("When a non-treating physician's opinion contradicts that of the treating physician—but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician—the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); Lester v. Chater, supra; Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984). The ALJ also must provide specific and legitimate reasons supported by substantial evidence in the record when rejecting the controverted opinion of an examining physician. Lester v. Chater, supra; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

G. Sunny Uppal, M.D., an orthopaedic surgeon at Orthopaedic Medical Group of Riverside, treated plaintiff on May 15, 2007, August 28, 2007, September 5, 2007, October 23, 2007, December 18, 2007,[3] January 22, 2008,[4] September 25, 2008, In the

---

[3] In the report dated December 18, 2007, Dr. Uppal noted that plaintiff was not taking pain medication, and stated that plaintiff's physical examination showed "60 degrees of flexion and 10 degrees of extension. Straight leg raising is positive for back and buttock pain. Ankle dorsi and plantar flexors, quadriceps and iliopsoas are 5/5." Under treatment plan, Dr. Uppal wrote, "I have told him if there is work available in which he is not doing heavy lifting, bending or stooping, he can do it." (AR 430).

[4] In the report dated January 22, 2008, Dr. Uppal stated that plaintiff's physical examination showed: "60 degrees of flexion and 10 degrees of extension. Straight leg raising is negative. Ankle dorsi and plantar flexors are 5/5. Quadriceps are 5/5. Iliopsoas are 5/5." Under the treatment plan, Dr. Uppal wrote, "At this point, I feel he has permanent restrictions of no heavy lifting, bending or stooping. In addition, I do feel . . . the cumulative trauma at work is responsible for this. At the point, I do feel he
continue...

report dated September 25, 2008, Dr. Uppal stated that plaintiff's physical examination showed: "60 degrees of flexion and 10 degrees of extension. Straight leg raising is negative. Ankle dorsi and plantar flexors, quadriceps and ilipsosas are 5/5." Following a review of X-rays, Dr. Uppal diagnosed plaintff with L4 through S1 decompression and fusion. Dr. Uppal opined as follows: "I feel [plaintiff] would be a good candidate for [social security disability benefits] as he takes pain medication and cannot do bending, stooping or lifting. In addition, he had to lay down every once in a while to get rid of the pain." With respect to treatment plan, Dr. Uppal stated "Naprosyn" and recommended that plaintiff get social security disability. (AR 420).

In the report dated February 18, 2009, Dr. Uppal wrote, "Examination of the low back reveals spasms. The patient has 40 degrees of flexion and 10 degrees of extension. Straight leg raising is positive." With respect to a treatment plan, Dr. Uppal stated, "At this point, I am recommending Vicodin" and "He is on permanent disability. I do not feel he can go back to work." (AR 453-54).

In the report dated January 12, 2010, after noting that plaintiff had undergone decompression and fusion of the lumbar spine and was taking Norco and Vicodin daily, Dr. Uppal wrote, "I do feel the causation of the patient's problem is cumulative due to the work he was doing. He is in the process of fighting to get a worker's compensation claim. I do not feel he can be gainfully employed for that reason. I told him he should be on Social Security Disability. This will be a permanent problem." Dr. Uppal reported that plaintiff had spasms in the lumbar spine, that the range of motion was 40 degrees of flexion and 10 degrees of extension, that straight leg raising was positive, that the Faber test was negative, and that ankle dorsiflexors and plantar flexors were 5/5, quadriceps were 5/5, and iliopsoas were 5/5. With respect to a treatment plan, Dr. Uppal wrote, "I

---

[4] ...continue
would be a good candidate for disability." (AR 426).

do feel [plaintiff] would be an excellent candidate for a permanent social security disability." (AR 455-56).

George S. Watkin, M.D., an agreed upon medical examiner, evaluated plaintiff on March 9, 2010. (See AR 458-71). Plaintiff complained of low back pain radiating down his right leg, with occasional numbness and tingling, with symptoms increasing with sitting, standing and walking longer than 5 to 10 minutes; and claimed his back injury is worse than it was when he was injured and underwent his surgeries. (AR 459). With respect to daily living activities, plaintiff stated he could not attain a sleep pattern of 7 hours; he had difficulty working outdoors on flat or uneven ground, climbing 5 flights of steps, and standing, walking or sitting for 30 minutes; and he had some difficulty dressing himself, washing and drying himself, taking a bath, getting on and off the toilet, opening car doors, reclining, rising from the chair, running errands, doing light house work, driving, shopping, and getting in and out of the February 18, 2009, and January 10, 2010 (See AR 420-47, 453-56).[5] car. (Id.). Examination revealed inter alia the following: plaintiff had a stiff legged gait; satisfactory ability to walk on heels and toes; a tilted right hip; no evidence of paraverterbal muscle spasm; flexion of 15 degrees, extension of 5 degrees, and right and left lateral bending of 10 degrees, bilaterally; a positive straight leg raising in the seated position at 60 degrees, bilaterally, a positive straight leg raising in the supine position at 40 degrees right and 45 degrees left; a positive Lasegue's test, bilaterally; and a positive fabere manuever, bilaterally; no sensory issues; and no gross weakness in muscular motor power. (AR 466). With respect to disability status, Dr.

---

[5] In the remand order, the Appeals Council wrote: "[T]reatment notes from G. Sunny Uppal, M.D., from late 2008 to February 2009, reflect continued complaints of pain, despite pain medications and more significant abnormalities than the Judge acknowledged, such as reduced range or motion, muscle spasms and positive leg raising. Dr. Uppal also reiterated his previous comment the claimant was a good candidate for disability (Exhibit 12 F). This evidence is not reflected in the decision and raises a significant question as to the degree of medical improvement achieved by the claimant. Further evaluation is needed." (AR 155).

8

Watkins found that plaintiff was at maximum medical improvement from an orthopedic standpoint; and that although further surgery could be justified, it was wise not to undergo surgery because plaintiff was not doing well after three surgeries. (AR 467-68). Based on plaintiff's description of his complaints and activities, and a review of the clinical findings and postoperative status, Dr. Watkin recommended that plaintiff be limited to light work with the ability to sit and stand at will. (AR 469).

Dr. Arthur Lorber, a medical expert, testified at the administrative hearing on September 13, 2010. (See AR 34-39).[6] Dr. Lorber testified that the additional medical evidence, including Dr. Uppal's January 10, 2010 report and Dr. Watkin's March 9, 2010 report, did not change his earlier opinions; that although he did not object to the sit/stand option recommended by Dr. Watkin, he believed 30 minutes at a time was adequate, for no more than 2 hours a day; that he disagreed with Dr. Watkin's recommendation of a sit/stand option at will; that the positive straight leg test reported by Dr. Uppal suggested irritation of the sciatic nerve (however, plaintiff's sensation and motor reflexes were normal); and that he disagreed with Dr. Uppal's opinion that plaintiff was disabled. (AR 34-39).

    a.    Dr. Uppal

After discussing the medical records of Dr. Uppal, Dr. Watkins, and the testimony of Dr. Lorber (see AR 21-22), the ALJ addressed Dr. Uppal's opinion as follows:

---

[6] The ALJ summarized Dr. Lorber's previous testimony as follows: "Medical Expert Dr. Lorber reported on December 31, 2008, in a medical interrogatory that subsequent to January 23, 2007, the claimant was capable of functioning at a sedentary level of activities in that he could lift ten pounds occasionally and less than ten pounds frequently; stand and/or walk for thirty minutes at a time for no more than two hours a day and sit for six hours a day for not more than one hour at a time; occasionally ben, stoop, and crouch but never kneel or crawl; must avoid all exposure to vibration and should not work at heights or balance or climb ladders, scaffolds, or ropers; and can occasionally ascend stairs and/or ramps. (Exhibit 11F page 2)." (AR 146-47; see AR 448-452).

>Dr. Uppal is clearly lumping together the effects of fighting a worker's compensation claim with the claimant's medical problems.  Dr. Uppal[] seems to have taken on the role of advocate for his patient and is making statements unsupported by objective medical findings such [as] the doctor['s] conclusion that the claimant needs to be or should be on disability.  Dr. Uppal's preceding finding of no heavy work, bending, or stooping was clearly the doctor's finding based on the objective findings.  (AR 22).

The ALJ later stated that greater weight was given to the findings of Dr. Lorber at the September 13, 2010 administrative hearing "because of the indications that Dr. Uppal has become an advocate for the claimant in his claims for disability benefits[.]"  (AR 23).

Here, the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of Dr. Uppal.  The ALJ properly found that Dr. Uppal's opinions were not supported by objective medical findings (see AR 22-23), because there was nothing in Dr. Uppal's treatment notes for December 18, 2007 and January 22, 2008  Dr. Uppal's opinion of a more restrictive limitation for plaintiff (compare AR 430 [On December 18, 2007, although plaintiff had a positive straight leg raising, Dr. Uppal stated he could do work which did not involve heavy lifting, bending or stooping] with AR 426 [On January 22, 2008, even though plaintiff had a negative straight leg raising and the same degrees of flexion and extension as on December 18, 2007, Dr. Uppal stated he permanently could not do heavy lifting, bending, or stooping].  There also is nothing in Dr. Uppal's treatment records after January 22, 2008 that supports Dr. Uppal's opinion that plaintiff was totally unable to work (see AR 420 [September 25, 2008 treatment notes], AR 453-54 [February 18, 2009 treatment notes], 455-56 [January 12, 2010], including the lack of any indication that, after 2007, plaintiff's ability to work was affected by his pain medications (see AR 420-29, 453-56).  See Batson v. Comm'r of Soc. Sec., supra; Burkart v. Bowen, supra; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that

opinion is brief, conclusory, and inadequately supported by clinical findings."). As noted by the ALJ (see AR 21), Dr. Uppal's opinion that plaintiff was disabled was contradicted by both Dr. Watkin and Dr. Lorber. (See AR 34-39, 458-69). See Morgan v. Apfel, supra; Andrews v. Shalala, supra, 53 F.3d at 1041-42; Magallanes v. Bowen, supra.

    b.    Dr. Watkin

After discussion of Dr. Uppal's and Dr. Watkin's medical records and Dr. Lorber's testimony, the ALJ proceeded to reject Dr. Watkin's opinion, as follows:

> Dr. Watkin's finding did in fact give greater weight to the claimant's subjective complaints by restricting him to light work, but it must be remembered this was in the context of a worker's compensation claim, which has significantly different criteria and terminology and terminology that used in Social Security disability claims. Furthermore, at page 13 of Exhibit 14F, Dr. Watkin noted "Mr. Milner indicates that he is currently on social security, retired with full benefits," which is a totally false statement and shows how far the claimant is stretching in an attempt to get on the disability rolls. Also at page 12 of Exhibit 14 F, when noting the claimant was asserting an inability to sit for more than five to ten minutes, Dr. Watkin emphasized that the claimant had driving twenty minutes to get to the examination without any apparent aggravation of his pain, which only reinforces the impression of at least symptom exaggeration. Also, Dr. Watkin emphasized that it appeared the claimant did not report his industrial injury in a timely manner which is consistent with the claimant's admission that he never received any worker's compensation temporary disability benefits and that the worker's compensation insurance carrier was fighting the case and so far was holding out because they were contending that he had not had an on the job injury. Exh. 14F at 14. Accordingly, Dr. Watkin's limitation involving a sit-stand at will option is not

supported by the evidence of record as a whole as Dr. Lorber found at the hearing on remand. (AR 22).

The ALJ did not provide specific and legitimate opinions for rejecting Dr. Watkin's opinion testimony. The four reasons given by the ALJ -- (a) Dr. Watkin's examination occurred in the context of a worker's compensation claim; (b) plaintiff's "stretching" based on his "totally false statement" to Dr. Watkins; (c) plaintiff's "symptom exaggeration" based on his 20-minute drive to Dr. Watkin's examination; and (d) plaintiff's apparent failure to report his industrial injury in a timely manner -- do not pass scrutiny, and simply were not sufficient bases for rejecting Dr. Watkin's testimony. While the ALJ discredits Dr. Watkin's restricting petitioner to a sit/stand at will option (light work) by stating it took place in the context of a worker's compensation claim, the ALJ did not state why the Dr. Watkin's opinion should be discredited, or why Dr. Watkin's opinion was not relevant in a Social Security disability context. Moreover, the ALJ's undue reliance on the statement in Dr. Watkin's report -- "Mr. Milner indicates that he is currently on Social Security, retired with full benefits" (AR 469) -- was improper. That statement may or may not have been accurate (since it was not necessarily a direct quote from plaintiff), and may have simply reflected Dr. Watkin's interpretation of plaintiff's statement. Neither plaintiff nor Dr. Watkin's were ever asked about that statement. In any event, contrary to the ALJ's assertion, that statement should not have been considered a "totally false statement" in that plaintiff did receive social security benefits, albeit for a closed period. His alleged (layperson) characterization of benefits can hardly be considered "false". Moreover, the ALJ's claim that plaintiff was exaggerating his symptoms when he spoke to Dr. Watkin about his inability to sit for more than five or ten minutes was improper, since it was based on the ALJ's mischaracterization of a statement in Dr. Watkin's report about plaintiff experiencing pain while driving. Although the ALJ wrote that "Dr. Watkin emphasized that the claimant had driven twenty minutes to get to the examination without any apparent

aggravation of his pain," Dr. Watkin did not state that plaintiff drove for twenty minutes without pain. Rather, Dr. Watkin wrote, "He does drive some, and drove 20 minutes to get to this office, but it hurt while he was driving." (AR 468). Finally, the ALJ failed to explain why plaintiff's apparent failure to timely report his industrial injury had any bearing on Dr. Watkin's credibility or on plaintiff's credibility with respect to his symptoms.

Contrary to the ALJ's assertion, substantial evidence, including Dr. Uppal's treatment records and Dr. Watkin's examination record, supported Dr. Watkin's recommendation of a sit-stand at will option for plaintiff. Accordingly, the ALJ erred in rejecting Dr. Watkin's testimony.

## ORDER

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings in accordance with the decision, pursuant to Sentence 4 of 42 U.S.C. § 405(g). At the hearing, the ALJ shall credit the testimony of Dr. Watkin. See Lester v. Chater, supra, 81 F.3d at 834 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"). Further, the hypothetical questions to the vocational expert should reflect plaintiff's limitations as per Dr. Watkin's testimony. See Hill v. Astrue, 2012 WL 5278388, *8 (9th Cir. 2012)("Because the overall record shows these additional assumptions should been incorporated into the ALJ's hypothetical, remand is appropriate."); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ."); see also AR 155.

DATED: October 30, 2012

_____
STEPHEN J. HILLMAN

UNITED STATES MAGISTRATE JUDGE